Albert FRIED, Dolores Feldman, Dr. Martin Feldman, Irving Fried, Howard Serlin, Max Albinder, Kive Feintuch, Max Feintuch, Max Wexler and Morton Fried ("Dissenting Lackawanna Stockholders"), Plaintiffs,

v.

UNITED STATES of America and The Interstate Commerce Commission, Defendants,

and

Erie-Lackawanna Railroad Company, Intervenor-Defendant.

United States District Court
S. D. New York.

Dec. 18, 1962.

As Amended Jan. 9, 1963.

Greenwald, Kovner, Goldsmith & Berger, New York City, for plaintiffs; Mark H. Berger, Margaret A. Berger, New York City, of counsel.

Vincent L. Broderick, U. S. Atty., New York City, Arthur S. Olick, Asst. U. S. Atty., Lee Loevinger, Asst. Atty. Gen., John H. D. Wigger, Dept. of Justice, Washington, D. C., for the United States, defendant.

Robert W. Ginnane, Gen. Counsel, I. K. Hay, Assoc. Gen. Counsel, Interstate Commerce Commission, Washington, D. C., for Interstate Commerce Commission, defendant.

Ralph L. McAfee, Rowland L. Davis, Jr., Cravath, Swaine & Moore, New York City, for Erie-Lackawanna Railroad Co., intervenor-defendant; Thomas D. Barr, Jeremiah D. Lambert, New York City, of counsel.

Before KAUFMAN, Circuit Judge, MacMAHON and FEINBERG, District Judges.

FEINBERG, District Judge.

This is an action by ten alleged stockholders of The Delaware, Lackawanna and Western Railroad Company ("Lackawanna") to enjoin in part or void entirely an order of the Interstate Commerce Commission ("Commission") authorizing the merger of the Lackawanna and the Erie Railroad Company ("Erie"). The action is brought pursuant to 28 U.S.C. §§ 1336, 1398 and 2321–25. The

merged railroad has intervened as a party defendant.

The merger under attack was accomplished pursuant to the Commission's order on October 17, 1960. Two days later, plaintiffs filed a complaint in this Court seeking only to set aside and enjoin that portion of the Commission's order approving the exchange ratio of common stock of Erie and Lackawanna for common stock of the merged company. For almost two years thereafter, plaintiffs apparently did absolutely nothing affirmatively to prosecute the action. Plaintiffs finally moved to convene a three-judge court only when compelled to do so by an order of this Court, dated June 27, 1962, which required them to do so upon pain of dismissal. It was apparently at that point that plaintiffs' present counsel entered the case. In their brief filed before this Court, plaintiffs for the first time, about two years after the merger was formally consummated, challenge the Commission's order in its entirety as void and beyond the Commission's jurisdiction. For the reasons indicated below, plaintiffs' complaint is dismissed.

The background leading to the present litigation is not in dispute. On July 6, 1959, the Lackawanna and Erie, facing financial difficulties operating alone,[1] jointly applied to the Commission under Section 5(2) of the Interstate Commerce Act (the "Act"), 49 U.S.C. § 5(2), for authority to merge pursuant to a Joint Agreement of Merger dated June 24, 1959. Hearings were conducted by an Examiner on September 29 through October 1, 1959, at Buffalo, New York, and on October 5–8, 15–16, and 19–22, 1959, inclusive, at Washington, D. C. The record before the Examiner, totalling 1710 pages, includes the testimony of many witnesses and voluminous exhibits, including detailed financial studies.

Plaintiffs, among others, intervened in that proceeding. Plaintiffs challenged the fairness of the stock exchange ratio of 1.25 shares of the merged company for each share of Erie stock, and one share of the merged company for each share of Lackawanna stock. Although the hearings before the Examiner were held almost three months after the filing of the joint application, plaintiffs did not present any witnesses or offer any evidence at the hearings, did not make "any suggestion of precise inequities of the agreed plan," and did not submit any alternative plan for the guidance and consideration of the Commission.[2] The Examiner's report recommended approval of the proposed merger, and referred, *inter alia*, to the savings which the merger would permit along with the resulting greater financial stability of the unified company.[3]

On September 13, 1960, the Commission issued its report and order adopting the findings and conclusions of the Examiner, with some supplementation, and authorizing consummation of the merger.[4] The Commission specifically provided that the order should not become effective until thirty days after service (September 15, 1960) to allow "intervenors [including plaintiffs] adequate time within which to take such steps as they deem warranted to protect their interests."[5] After the passage of thirty days, plaintiffs filed their complaint in this Court.[6]

---

1. The Hearing Examiner found that: "In recent years the operations of each applicant produced income less than sufficient to satisfy their annual fixed charges and contingent interest payments and resulted in both railroads being financially weak despite continued efforts to reduce avoidable operating costs individually, and to coordinate certain separate operations to the financial benefit of both." Erie R.R. Co. Merger, 312 I.C.C. 185, 244 (1960).

2. Id. at 242.

3. Id. at 247, 248.

4. Id. at 186.

5. Id. at 196.

6. Within the 30-day period, one of the unions affected by the Commission's order did commence proceedings in a United States District Court to enjoin and set aside the order. Both the District Court and the Supreme Court affirmed

Plaintiffs current contentions concern not only the ratio for the exchange of stock referred to above but also the Erie and Lackawanna proxy statements sent to stockholders prior to a stockholder vote on the merger, and various questions of procedure before the Examiner.

I

Section 5(2) (a) of the Act, 49 U.S. C.A. § 5(2) (a), provides that it shall be lawful, with the approval of the Commission, for two carriers to merge into one corporation. After a public hearing on the application for merger,

> " * * * If the Commission finds that, subject to such terms and conditions and such modfications as it shall find to be just and reasonable, the proposed transaction * * * will be consistent with the public interest, it shall enter an order approving and authorizing such transaction, upon the terms and conditions, and with the modifications, so found to be just and reasonable * * *." 49 U.S.C. § 5(2) (b).

Plaintiffs argue that the evidence presented before the Commission fails to establish that the stock exchange ratio of the plan for merger between the railroads was "just and reasonable," as found by the Commission, and that such ratio was unfair and inequitable to the Lackawanna shareholders.

Plaintiffs point to several factors which they claim were ignored or given too little weight by the Commission in permitting Erie stockholders to receive 1.25 shares in the unified company for each share previously owned, whereas Lackawanna shareholders received stock in the new company on only a one-for-one basis. Plaintiffs claim, among other things, that the Commission failed to give appropriate consideration to book value and current and long term ratios of assets to liabilities of the respective railroads.

Moreover, preemptive and cumulative voting rights granted to shareholders under state law were not, according to plaintiffs, accorded proper significance by the Commission.

In the absence of an overreaching of the Commission's constitutional power, its order should not be set aside by a reviewing court unless convincing proof is offered to show that it is unjust and unreasonable or not supported by substantial evidence. See Stott v. United States, 166 F.Supp. 851, 855 (S.D.N.Y. 1958), and cases cited therein. Any reviewing court must be aware of the extensive facilities, specialized knowledge, and expertise which the Commission brings to the constitutional exercise of its statutory power, and must defer to the judgment and experience of the Commission in weighing complicated facts, balancing conflicting interests, and predicting future consequences of a complex transaction. See, e. g., McLean Trucking Co. v. United States, 321 U.S. 67, 87–88, 64 S.Ct. 370, 88 L.Ed. 544 (1944) ; Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 286–87, 54 S.Ct. 692, 78 L.Ed. 1260 (1934). The function of the reviewing court under Section 10(e) of the Administrative Procedure Act, 5 U.S.C. § 1009(e), has been ably summarized in Stott v. United States, supra, which reviewed a challenged portion of a Commission order approving, as just and reasonable, the stock exchange ratio of a merger plan between two railroads. Judge Bryan, speaking for a three-judge statutory court, stated (166 F.Supp. at 857) :

> " * * * [A] reviewing court must scrutinize the record and the findings to determine whether the Commission has considered all the factors which the statute requires to be taken into account in making the decision under review * * *. There is no requirement that the re-

the order. Brotherhood of Maintenance of Way Employees v. United States, 189 F.Supp. 942 (E.D.Mich.1960), aff'd, 366

U.S. 169, 81 S.Ct. 913, 6 L.Ed.2d 206 (1961).

viewing court comb through the record for insubstantial or non-prejudicial error, or substitute its own judgment for that of the agency, or consider the expediency or wisdom of the decision, or whether on like testimony it would have made a similar ruling. Nor is the reviewing court permitted to do so. Its sole function is to determine whether the Commission gave consideration to all of the factors which it was required to consider in making its decision, and whether on the record as a whole there was 'substantial evidence' to support its findings and its order."

In that case, the Court found that the exchange was "just and reasonable," that the Commission properly applied the standards set forth in the Act, and that in considering all of the factors determining what the stockholders of each railroad involved in the merger received, it fully carried out its duty of protecting the interest of the minority.

In Schwabacher v. United States, 334 U.S. 182, 68 S.Ct. 958, 92 L.Ed. 1305 (1948), the Supreme Court also considered the meaning of the phrase "just and reasonable" as applied to an exchange ratio of securities attacked by dissenting stockholders. Schwabacher makes perfectly clear that when passing upon a voluntary merger the Commission is required to use only those standards established by the Act, and that dissenting stockholders are not entitled to any premium solely by reason of their dissent. Thus, the Court said (334 U.S. at 198–200, 68 S.Ct. at 967–968):

" * * * [I]t is equally clear that the Commission must look for standards in passing on a voluntary merger only to the Interstate Commerce Act. In matters within its scope it is the supreme law of the land * * *.

"Apart from meeting the test of the public interest, the merger terms, as to stockholders, must be found to be just and reasonable

* * *. In appraising a stockholder's position in a merger as to justice and reasonableness, it is not the promise that a charter made to him but the current worth of that promise that governs, it is not what he once put into a constituent company but what value he is contributing to the merger that is to be made good.

*    *    *    *    *    *

"Congress has made no provision by which minority stockholders, dissatisfied with a proposed railroad merger, may block it or compel retirement of their capital, as statutes often permit to be done in the case of private corporations where the public interest is not much concerned with its effect on the enterprise * * *."

In that case, the Supreme Court remanded the case to the Commission on the ground that the Commission might have failed to consider the effect on value of claimed stockholder rights under state law and charter provisions to preference in liquidation. The Court stated (334 U.S. at 201, 68 S.Ct. at 968):

"In determining whether each class of stockholder receives an equivalent of what it turns in, the Commission, of course, is under a duty to see that minority interests are protected, especially when there is an absence of arm's length bargaining or the terms of the merger have been imposed by management interests adverse to any class of stockholders * * *.

"We therefore hold that no rights alleged to have been granted to dissenting stockholders by state law provision concerning liquidation survive the merger agreement approved by the requisite number of stockholders and approved by the Commission as just and reasonable. Any such rights are, as a matter of federal law, accorded recognition in the obligation of the Commission not to approve any plan which is not

just and reasonable. *In making that determination, those rights are to be considered to the extent that they may affect intrinsic or market values \* \* \**". (Emphasis added.)

It is evident from the record before us that the Commission has done exactly what the Act requires and used the standards established by the Act. In adopting the report of the hearing Examiner, the Commission clearly dealt with the allegations of the dissenting stockholders that the stock exchange ratio was unfair. It pointed out that although book value and preemptive and cumulative voting rights of minority stockholders were not considered to be of controlling significance, they were, however, proper elements to be weighed in determining whether the proposed merger was just and reasonable, and were in fact considered in reaching its conclusion. The Commission noted that (312 I.C.C. at 188):

"The dissenting stockholders are correct in their contention that all of such matters are properly for consideration in determining the justness and reasonableness of the terms of the proposed merger, and such consideration has been given in arriving at our conclusion that the terms are just, reasonable, and fair to stockholders of each of the carriers involved. A more important element, however, in determining the reasonableness of the terms is the comparative earning power of the two carriers in relation to the shares of stock outstanding. The examiner's report contains a thorough analysis of the comparative earnings of the two carriers and of other pertinent factors properly for consideration in appraising the reasonableness of the proposed stock distribution. The record is convincing that the terms are just and reasonable, and that approval thereof will be consistent with the decision of the United States Supreme Court in Schwabacher v. United States, 334

U.S. 182 [68 S.Ct. 958, 92 L.Ed. 1305], as well as other pertinent court decisions cited by the dissenting stockholders in support of their position. Not to be overlooked, in connection with this subject, is that the terms were arrived at as a result of arm's length bargaining by representatives of the carriers involved and have received approval of a great majority of the stockholders of each."

The Examiner was also fully aware of these and other contentions of the dissenting stockholders regarding the exchange ratio, and explicitly dealt with them. He pointed out that (312 I.C.C. at 242-43):

"In concert with explanations by the applicants' witnesses on cross-examination, and upon review of the entire record, the examiner finds that these rights have minute value, if any. As grounds for that conclusion, it is shown that (a) because a preponderance of the applicants' investments are in operating properties as opposed to liquid assets, book value does not reflect the earning power of the properties or influence the market price of its capital stock, and, as it designates only the historical cost of the properties involved, less depreciation, indebtedness, and other items, book value does not directly relate to current real value; (b) the Lackawanna stockholders have had no occasion to exercise their preemptive rights since about 1912, and as it is not contemplated that new stock of Lackawanna would be issued by the unified company, any value such rights ever might have had would be extinguished; and (c) the cumulative rights never have attached to the Lackawanna stock issues, as shown by the various special acts of the Pennsylvania Legislature (dating back to 1832) which comprise the Lackawanna's corporate charter. There is no conflict be-

tween the foregoing views and the directive of the Supreme Court in Schwabacher v. United States, 334 U.S. 182 [68 S.Ct. 958, 92 L.Ed. 1305], and the other cases cited by the dissenters. Any just and reasonable consideration of the book value, preemptive rights, and cumulative voting rights would not change the aptness of the terms of exchange of stock provided in the merger agreement."

The Examiner reviewed all the diverse factors which had been considered by the applicant railroads, and noted that these included (312 I.C.C. at 236–37):

" * * * (1) earnings for individual years and averages of various periods during the 10 preceding years, (2) allowances in considering the records of earnings to remove distortions arising from extraordinary occurrences such as Hurricane Diane in 1955 and service losses on non-depreciable road properties retired and not replaced, (3) savings realizable (Wyer report), (4) annual and average railway operating revenues, (5) prospective earning power, (6) net working capital, and (7) stock values based upon market prices. Also considered by the applicants' committees which negotiated the final stock exchange ratio were the relationship of the applicants' respective gross revenues, fixed charges, contingent charges, net investment in transportation property, investment in affiliated and other companies, net current assets, earnings per share of common stock, equipment ownership, and traffic potentials. The data underlying most of the studies are shown in the balance sheet and in-

come account statements appended hereto, and in the Form "A" Annual Reports to this Commission of the Erie and the Lackawanna for the years 1949 through 1958, which by reference were incorporated into the record herein."

The Examiner concluded that (312 I.C.C. at 243):

"Considered in its entirety, the record establishes that the stock exchange ratio was equitably arrived at upon full and careful consideration of every element pertaining to financial arrangements and operational advantages * * *."

█ Based upon the record as a whole, which we have examined carefully, it is clear that the Commission properly applied the standards of the Act in its examination of the exchange ratio and that its findings are supported by substantial evidence. Basically, what plaintiffs want this Court to do is substitute its judgment for that of the Commission as to the importance in this context of factors which plaintiffs claim should have been given greater weight, including book value and the alleged stockholder rights. This we should not and will not do. See Gilbertville Trucking Co. v. United States, 83 S.Ct. 217 (1962); United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 536, 66 S.Ct. 687, 90 L.Ed. 821 (1946); I. C. C. v. Union Pac. R. R., 222 U.S. 541, 547–48, 32 S.Ct. 108, 56 L.Ed. 308 (1912).

## II

Plaintiffs also contend that the Commission lacked jurisdiction to approve the Erie-Lackawanna merger under Section 5(2) of the Act, and, therefore, the order approving the plan is void. Plaintiffs reason that Section 5(11) of the Act [7]

7. *"Plenary nature of authority under section.* The authority conferred by this section shall be exclusive and plenary, and any carrier or corporation participating in or resulting from any transaction approved by the Commission thereunder, shall have full power (with the assent, in the case of a purchase and sale, a lease, a corporate consolidation, or a corporate merger, of a majority, unless a different vote is required under applicable State law, in which case the number so required shall assent, of the votes of the holders of the shares entitled to vote of

requires a valid vote approving the merger by the shareholders of the merging railroads as a prerequisite to the assumption of jurisdiction by the Commission, and urge that this jurisdictional condition was not fulfilled.

Plaintiffs claim that the shareholder votes approving the merger were invalid, since the proxy statements soliciting such stockholder approval were false and misleading because they led the individual stockholder to believe that a dissenting vote "would be futile and worthless." [8] Plaintiffs point to a portion of the proxy statements of both railroads which stated that:

> "In the opinion of counsel * * *, the remedies for the dissenting stockholders provided in the New York and Pennsylvania statutes do not apply to the proposed merger of the Lackawanna into the Erie, because they are overridden by Section 5 of the Interstate Commerce Act, as amended, under the decision of the Supreme Court of the United States in Schwabacher v. United States, 334 U.S. 182 [68 S.Ct. 958, 92 L.Ed. 1305] (1948)." [9]

Plaintiffs claim that this statement of counsel's opinion was misleading because a stockholder might interpret it to mean that he had no rights as a dissenter, or that any rights which he may have had were completely obliterated by the United States Supreme Court in Schwabacher v. United States, 334 U.S. 182, 68 S.Ct. 958, 92 L.Ed. 1305 (1948).

■ This point was not raised by plaintiffs before the Commission [10] nor was it raised in their complaint in this Court filed in October 1960. It was not until October 1962, when plaintiffs' brief was filed before this three-judge court that this point was made for the first time. Under these circumstances, where plaintiffs have obviously had an afterthought some three years after the hearing before the Examiner, a court would naturally be loath to upset a proceeding by finding a "jurisdictional" defect. But even if plaintiffs had raised this point earlier before the Commission, or had presented it at the Securities and Exchange Commission, [11] or afterwards in this court, [12] our conclusion would still be that plaintiffs' contention that the Commission lacked jurisdiction to enter its order is untenable.

■ Assuming for the moment, *arguendo*, that a valid shareholder vote approving the merger is a necessary prerequisite to the assumption of jurisdiction by the Commission under the Act, there is no merit to the claim that the proxy statements were false or misleading. [13] The challenged portion of each

---

the capital stock of such corporation at a regular meeting of such stockholders, the notice of such meeting to include such purpose, or at a special meeting thereof called for such purpose) to carry such transaction into effect and to own and operate any properties and exercise any control or franchises acquired through said transaction without invoking any approval under State authority * * *." 49 U.S.C. § 5(11).

8. Brief for Plaintiffs, p. 7.

9. Exhibit H–10, p. 13; Exhibit H–46, p. 13.

10. Plaintiffs' reply brief, p. 2a, notes that plaintiffs' counsel before the Commission "alluded to the question of jurisdiction." However, it is quite clear that despite the "allusion," no contention was made

before the Commission that the proxy statements were false and misleading.

11. As to plaintiffs' right to file a complaint in that forum, see discussion in 2 Loss, Securities Regulation 952 (2d ed. 1961) and authorities cited therein.

12. Cf. Kauder v. United Board & Carton Corp., 199 F.Supp. 420 (S.D.N.Y.1961); Mack v. Mishkin, 172 F.Supp. 885 (S.D. N.Y.1959).

13. Plaintiffs claim that the proxy statements violated Rule X–14a–9 of the Securities and Exchange Commission, which provides that:

> "No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting, or other communication, written or oral, containing any state-

proxy statement appears to be an accurate paraphrase of the Schwabacher rule and its effect on the rights of dissenting shareholders under state law. In Schwabacher, as discussed above, the Supreme Court held that no rights granted to dissenting stockholders by state law survive a railroad merger approved by the Commission and the stockholders, even though such rights should be taken into consideration by the Commission in determining whether the merger plan and its terms are "just and reasonable" under the Act. The meaning of each proxy statement is perfectly clear, i. e., that the remedies of dissenting stockholders are available only under Section 5 of the Act, rather than under the New York and Pennsylvania statutes. It is true that the paragraph in question does not indicate that the Commission must consider the rights of dissenting stockholders as an element in determining whether the merger is "just and reasonable." [14] However, any conclusion that a stockholder might have understood the proxy statement to mean that his rights as a dissenter were completely obliterated by the Schwabacher rule is dispelled by another portion of each proxy statement a few paragraphs away, which clearly indicates that a stockholder had an absolute right to intervene in the proceedings before the Commission.[15] Under the circumstances, we do not think that the proxy statements were false or misleading.[16]

Defendants contend that plaintiffs' argument that the proxy statements were misleading cannot be considered in this Court in any event because it was not a jurisdictional defect and was not raised below.[17] In view of our finding on the merits, it is unnecessary to deal with these contentions.

### III

Plaintiffs also allege that basic procedural errors were committed by the Examiner that violated Section 7(c) of the Administrative Procedure Act, 5 U.S.C.

---

ment which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading."

14. Plaintiffs suggest that the following sentence should have been added to the proxy statements to emphasize this point: "The Interstate Commerce Commission, however, which has exclusive jurisdiction over the proposed merger, is required by that case [Schwabacher] to consider and evaluate rights given to dissenting stockholders by state law to the extent that they may affect intrinsic or market values." Brief for Plaintiffs, p. 11.

15. Thus, the proxy statement of the Lackawanna set forth the following: "Any stockholder of the Lackawanna or the Erie may file a petition for leave to intervene in the proceeding pending before the Interstate Commerce Commission in Finance Docket No. 20707. If the petition is granted, evidence may be submitted and arguments made in support of the petition of such stockholders. The Commission has the power, under Section 5 of the Interstate Commerce Act, as amended, to impose such conditions as it may find to be just and reasonable." (Exhibit H-46, p. 13).
The Erie proxy statement had a similar statement. (Exhibit H-10, p. 12).

16. See Shvetz v. Industrial Rayon Corp., 212 F.Supp. 308 (S.D.N.Y.1960). Compare S. E. C. v. May, 134 F.Supp. 247 (S.D.N.Y.1955), aff'd, 229 F.2d 123, 55 A.L.R.2d 1123 (2 Cir. 1956); S. E. C. v. Okin, 137 F.2d 862, 148 A.L.R. 1019 (2 Cir. 1943).

17. Cf. United States v. L. A. Tucker Truck Lines, Inc., 344 U.S. 33, 73 S.Ct. 67, 97 L.Ed. 54 (1952); United States v. Capital Transit Co., 338 U.S. 286, 70 S.Ct. 115, 94 L.Ed. 93 (1949); General Transp. Co. v. United States, 65 F.Supp. 981 (D. Mass.), aff'd per curiam, 329 U.S. 668, 67 S.Ct. 75, 91 L.Ed. 590 (1946).

§ 1006(c),[18] and denied them due process of law under the Fifth Amendment of the United States Constitution.

Plaintiffs first argue that the Examiner erroneously excluded as irrelevant, and refused to compel the production of, a study performed by the First Boston Corporation, a New York investment firm.[19] That company was engaged in July 1958, by the Erie, the Lackawanna, and another railroad, the Delaware and Hudson Railroad Company, to determine the feasibility of a three-carrier merger [20] and, in April 1959, orally recommended against such a step.[21] The Examiner, while ordering the production of all reports, studies and communications directy related to the two-carrier merger,[22] apparently felt that the First Boston report was solely concerned with the three-carrier merger [23] and that any facts in that report which might have relevancy to the Erie-Lackawanna merger were either already in the record or in other studies relating to the two-carrier merger which could be presented on the record.[24] Plaintiffs also contend that the Examiner erroneously curtailed their rights of cross-examination, particularly with reference to an allegedly crucial witness, Lewis G. Harriman, a member of Lackawanna's executive and merger committees, who appeared at the hearing on behalf of the applicants. As to Harriman, the Examiner's ruling was based upon the cumulative nature of the witness' testimony [25] and plaintiffs' "effective waiver" of cross-examination.[26] The Commission stated that it was disregarding this witness' testimony.[27] Finally, plaintiffs argue that the Examiner improperly closed the hearing in the absence of plaintiffs' counsel on a day when the Examiner had been notified that coun-

18. "(c) Except as statutes otherwise provide, the proponent of a rule or order shall have the burden of proof. Any oral or documentary evidence may be received, but every agency shall as a matter of policy provide for the exclusion of irrelevant, immaterial, or unduly repetitious evidence and no sanction shall be imposed or rule or order be issued except upon consideration of the whole record or such portions thereof as may be cited by any party and as supported by and in accordance with the reliable, probative, and substantial evidence. Every party shall have the right to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts. In rule making or determining claims for money or benefits or applications for initial licenses any agency may, where the interest of any party will not be prejudiced thereby, adopt procedures for the submission of all or part of the evidence in written form."

19. Record [Record hereinafter cited as "R"] pp. 93, 141, 759–82.

20. Erie R. R. Co. Merger, 312 I.C.C. 185, 212 (1960).

21. There was an apparent conflict in the testimony as to whether the report of the First Boston Corporation was in oral or written form (R. 109, 166, 172, 852, 954). The Examiner found that the report was made orally. Erie R. R. Co. Merger, supra at 212, 242.

22. R. 765.

23. R. 768–69.

24. R. 768. Aside from the First Boston Report, plaintiffs also claim that certain other documents relating to the proposed stock exchange ratio were erroneously excluded by the Examiner. R. 758–82. However, it appears that here also the Examiner ruled that all reports, studies, and communications directly relating to the two-carrier merger should be made available to plaintiffs, R. 765, while the request for other documents dealing with the three-carrier merger was denied.

25. Cf. Section 1.76 of the Commission's General Rules of Practice, 49 C.F.R. § 1.76 (Supp.1962), which states that:
"It shall be the duty of the officer before whom any proceeding is being heard to limit the number of witnesses whose testimony may be merely cumulative. And in order to enforce this section, the officer may require a clear statement on the record of the nature of the testimony to be given by any witness proffered."

26. Erie R. R. Co. Merger, supra at 200.

27. Id. at 187.

sel would be occupied elsewhere. On this issue, the Commission noted that the absence of plaintiffs' predecessor counsel on the last day of hearings was voluntary and after the receipt of notice to appear.[28]

From an examination of the record, it is clear that none of the rulings call for reversal of the Commission order. An administrative agency is not bound by technical common law principles of evidence and procedure. See, e. g., Opp Cotton Mills, Inc. v. Administrator, 312 U.S. 126, 155, 61 S.Ct. 524, 85 L.Ed. 624 (1941); Rochester Tel. Corp. v. United States, 307 U.S. 125, 139, 59 S.Ct. 754, 83 L.Ed. 1147 (1939). Moreover, an Examiner is not required to compel the production of every item of evidence which a party desires. He may, in his discretion, deny a request for production which is merely cumulative or immaterial to the issues presented. Stott v. United States, supra, 166 F.Supp. at 862; cf. United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 229-31, 60 S.Ct. 811, 84 L.Ed. 1129 (1940). In fact, the Administrative Procedure Act [29] clearly sanctions the exclusion of evidence which is irrelevant or cumulative. In the light of these basic principles, we find that the rulings which plaintiffs attack did not deny plaintiffs' procedural due process or constitute prejudicial error under the Administrative Procedure Act, 5 U.S.C. § 1009(e). After reviewing the record before us, we find no basis for the contention that plaintiffs did not receive a full, fair and impartial hearing. See ABC Freight Forwarding Corp. v. United States, 169 F.Supp. 403 (S.D.N.Y.1959); Canadian Pac. R. R. v. United States, 158 F.Supp. 248 (D.Minn.1958).

### IV

Defendants have strongly urged that none of plaintiffs' contentions should be considered favorably because plaintiffs have been guilty of laches and, in any event, the controversy is moot. It is true that as a court of equity [30] we would have to consider, were we required to do so, the inconvenience and confusion which would be caused by a setting aside of the merger at this date, when, according to defendants, almost all the shares of stock have changed hands and the unified railroad has made large scale changes in its operations and facilities as a result of the merger.[31] However, in view of the resolution of the issues discussed above, it is not necessary to deal with these questions.[32] We conclude that no grounds have been shown for vacating and setting aside, in whole or in part, the order and findings of the Commission, and we therefore dismiss the complaint seeking review of the order. Judgment will be entered accordingly.

28. Id. at 187, 201.

29. See note 18 supra.

30. Cf. Burlington Truck Lines, Inc. v. United States, 83 S.Ct. 239 (1962).

31. These contentions were made in intervenor-defendant's brief and in oral argument. See also affidavit of Rowland L. Davis, Jr., p. 2, July 26, 1962.

32. It is also not necessary to deal with plaintiffs' argument that the proof relied upon by defendants to show the alleged change of circumstances is not properly before us.