**CLEARFIELD CHEESE COMPANY,**
**Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission,**
**Defendants.**

Civ. A. No. 15106-3.

United States District Court
W. D. Missouri, W. D.

June 27, 1969.

Tom B. Kretsinger, of Kretsinger & Kretsinger, Kansas City, Mo., for plaintiff.

John H. D. Wigger, Department of Justice, Washington, D. C., Calvin K. Hamilton, U. S. Atty., by John L. Kapnistos, Asst. U. S. Atty., Kansas City, Mo., Fritz R. Kahn, Washington, D. C., for defendant United States Interstate Commerce Commission.

Before GIBSON, Circuit Judge, BECKER, Chief District Judge, and OLIVER, District Judge.

## MEMORANDUM OPINION AND FINAL JUDGMENT

BECKER, Chief District Judge.

This is an action by plaintiff Clearfield Cheese Company ("Clearfield" hereinafter) against the United States and the Interstate Commerce Commission, pursuant to the provisions of Sections 1336, 1398, 2284 and 2321–2325 of the Judicial Code, 28 U.S.C. §§ 1336, 1398, 2284 and 2321–2325; Section 17 of the Interstate Commerce Act, 49 U.S.C. § 17; and Section 10 of the Administrative Procedure Act, 5 U.S.C. §§ 702–706, to enjoin, annul and set aside orders of the Interstate Commerce Commission.

The challenged orders are the cease and desist orders of the Interstate Commerce Commission, ("Commission" hereinafter) ordering Clearfield to cease its hauling of sugar from points in Louisiana to points in Missouri on buy-and-sell arrangements which the Commission found to be for-hire carriage by motor vehicles without appropriate authority from the Commission in violation of Sections 203(c) and 206(a) or 209(a) of the Interstate Commerce Act.

The defendant Commission found on August 21, 1963, after a hearing conducted before its hearing examiners that plaintiff Clearfield, insofar as the present proceedings are concerned,[1] had its principal office and center of operations at Clinton, Missouri; that it manufactured and delivered cheese and allied products to retailers in an area covering a 125-mile radius; that, in the years 1959 and 1960 (and possibly before and after), Clearfield, after delivering its products to New Orleans, would then arrange with a sugar broker, Van Hook, to return a load of sugar directly to Van Hook's customers in order to recoup backhaul costs; that varying prices were charged for such hauling according to the distance which plaintiff carried the load; that the loads of sugar, canned goods and fruits, according to the defendant, were carried to points nearer the home office of the plaintiff corporation, thereby greatly facilitating plaintiff's recoupment of its backhaul costs. The defendant Commission issued on the above date its cease and desist orders ap-

---

1. Previously, the "report and order" of hearing examiners William J. Cave and Alvin H. Schutrumpf had recommended a cease and desist order after finding Clearfield Cheese Company "to be or to have been engaged in the transportation of sugar and canned goods, as a for-hire carrier by motor vehicle in violation of the provisions of Sections 203(c), and 206(a) or 209(a) of the Interstate Commerce Act." The Commission itself made the finding and, accordingly, entered the cease and desist order with regard to sugar only.

plicable to Clearfield's above-described deliveries of sugar. Section 203(c) of the Interstate Commerce Act, 49 U.S.C. § 303(c), contains the applicable statutory standard, and reads in pertinent part as follows:

"Except as provided in section 302 (c) of this title, subsection (b) of this section, in the exception in subsection (a) (14) of this section, and in the second proviso in section 306(a) (1) of this title, no person shall engage in any for-hire transportation business by motor vehicle, in interstate or foreign commerce, on any public highway or within any reservation under the exclusive jurisdiction of the United States, unless there is in force with respect to such person a certificate or a permit issued by the Commission authorizing such transportation, nor shall any person engaged in any other business enterprise transport property by motor vehicle in interstate or foreign commerce for business purposes unless such transportation is within the scope, and in furtherance, of a primary business enterprise (other than transportation) of such person."

In seeking to bring itself within the exemption provided by the terms of the controlling statute, Clearfield challenges the finding of the Commission that its transportations of sugar were solely for the purpose of recouping its backhaul costs, and contends that it hauled the sugar in furtherance of its primary business.

■ Section 706, Title 5, U.S.C., governs the judicial review of the Commission's action in this case. That section states that review shall be on the "whole record" and that the reviewing court shall "hold unlawful and set aside agency action, findings and conclusions found to be" arbitrary, capricious, abusive of discretion, or otherwise unlawful or contrary to a constitutional right, power, privilege or immunity, or in excess of agency jurisdiction, or unsupported by substantial evidence, or arrived at without observance of lawful procedures or

"unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court." Accordingly, the decision and action of the Commission in this case can lawfully be affirmed by this Court if six standards are met:

(1) the hearing procedures were fair and lawful, Section 706(2) (D), Title 5, U.S.C., Clemens v. Central Railroad Co. of New Jersey (E.D. Pa.) 264 F.Supp. 551, 572

(2) evidence was received on the material factual issues, Seaboard Coast Line R. Co. v. United States (E.D.Va.) 283 F.Supp. 866, 869–870; ABC Freight Forwarding Corp. v. United States (S.D.N.Y.) 169 F.Supp. 403, 406

(3) the findings of fact are supported by substantial evidence, Illinois Central R. R. v. Norfolk & W. R. R., 385 U.S. 57, 69, 87 S.Ct. 255, 17 L.Ed.2d 162

(4) the findings of fact are sufficient to resolve the crucial issues, Beaumont, S. L. & W. Ry. [Co.] v. United States, 282 U.S. 74, 51 S.Ct. 1, 75 L.Ed.2d 221; Capital Transit Co. v. United States (D. D.C.) 97 F.Supp. 614, 2 K. Davis, Administrative Law Treatise, §§ 16.05, 16.09, 16.10.

(5) the correct legal standards were applied in determining the ultimate issues, United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 62 S.Ct. 722, 86 L.Ed. 971; Frozen Food Express v. United States (N.D.Tex.) 219 F.Supp. 131

(6) all regulations of defendant applied in arriving at the decision were lawful and valid as applied in this case, 1 K. Davis, op. cit. *supra*, § 5.05; Matlack [Inc.] v. United States (E.D.Pa.) 119 F. Supp. 617, 622.

The burden of proof was not imposed on Clearfield, therefore there is no error in respect to the burden of proof.

■■ On consideration of the first standard, the Court concludes that the hearing procedures were fair and lawful. All parties to the hearing, including plaintiff, it appears from the files and records, were given notice of the hearing and an opportunity to be heard. Plaintiff was represented at the hearing by counsel, who was given an opportunity to cross-examine witnesses, present rebuttal testimony and evidence, and object to the admission of any evidentiary items. Further, plaintiff does not in its complaint here raise any contention with regard to the fairness or lawfulness of the administrative proceedings. After the hearing before hearing examiners Cave and Schutrumpf, plaintiff had raised the following procedural and evidentiary questions:

(1) Plaintiff objected to the participation of the Bureau of Inquiry of the Commission in the proceeding on the ground that the Commission, through the Bureau and the examiners, acted as "the complainant, the prosecutor and the finder of facts, and conclusions of law, with the power to enter an adverse order against the respondent Clearfield." Such participation, however, was consonant with the applicable provisions of the Administrative Procedure Act, Section 554, Title 5, U.S.C. See Southern Ry. Co. v. United States (N.D.Ala.) 186 F.Supp. 29. Separation of the investigative and judicial functions was maintained by virtue of the fact that the Bureau was not responsible to the same officer, employee or agent as the hearing examiners.

(2) Plaintiff also objected to the reception in evidence of copies of letters dated May 31, 1961, and April 12, 1962, from the Regional Attorney for defendant to several respondents in the administrative hearing, including petitioner, which letters stated the legal authority and jurisdiction under which the hearing was held, outlined the evidence proposed to be submitted, contentions to be made, and the case law deemed applicable. Plaintiff objected that the copies of the letters were not the "best evidence" thereof. The Regional Attorney testified that he prepared the originals, signed them, placed them in franked envelopes with return addresses and deposited them in regular mail, and that none were returned to him. The "best evidence" rule applies only when it is the contents of a document which are in issue. Here, however, the issue was whether notice had been given in compliance with Section 5(a) of the Administrative Procedure Act (Section 554(b), Title 5, U.S.C.). Thus, where an independent act, such as giving notice, is to be proved, the testimony of the Regional Attorney and the copies of the mailed letters were properly admitted on that issue.[2]

Those questions, thus, were properly resolved against the contentions of plaintiff.

2. On post-trial reconsideration, the examiners also received in evidence a statement of box car rates from Chalmette and Matthews, Louisiana, to various Arkansas and Missouri points which they had rejected during the hearing upon plaintiff's objection that the exhibit compared rail rates with motor rates (which it did not); that it was not supported by the underlying tariffs and that the sponsoring witness could not state whether there had been subsequent changes in the rates. The third objection is obviously without merit, when the rates at the time of the events was a relevant question and the second objection is answered by Rule 1.81(b) of the Commission's General Rules of Practice which obviates the need for the production of tariffs to support such items of evidence as this.

■ Also plaintiff made numerous objections to several evidentiary items [3] which were overruled but which it did not brief before the Commission. Of chief importance to the reviewing court were objections made by plaintiff on the basis of hearsay to witness Schreier's report of declarations of Van Hook. Such objections were overruled on the basis that Van Hook was a respondent in the proceedings before the Commission, who had a right and duty to appear and testify. However, it is clear from the record that Van Hook was in fact absent from the said hearing. Therefore, the evidence admitted was hearsay in respect of the plaintiff Clearfield and therefore, while admissible,[4] could not form the sole basis of a decision adverse to it. So Stevedoring Co. v. Voris (C.A. 5) 190 F.2d 275. Assuming that the extrajudicial declarations of Van Hook were not substantial evidence against Clearfield it does not appear, however, that such evidence was the only evidence supporting the Commission's decision on the issue in question. Therefore the alleged error would not require reversal of the Commission.

Second, extensive evidence was taken on the material factual issues—principally whether plaintiff did in fact haul sugar during the time in question and whether it did so on its own account and in furtherance and scope of its primary business enterprise (other than transportation) or whether it did so on the account of a broker, for whom it charged his customers with graduated prices in order to recoup backhaul costs from deliveries made in the scope of primary business.

The evidence which was taken at the hearing is summarized in the marginal notes.[5] The hearing lasted two days and

3. None of the rulings made on those objections appears to have been prejudicial error, if error at all. As has been noted *infra* at note 5, the testimony of witness Quinn was considerably weakened by his testimony of only remote familiarity with much of the subject matter testified to. (Tr. 84 et seq.). Otherwise, there were virtually no evidentiary or procedural objections which affected the substance of this cause.

4. Administrative agencies are not bound by technical common law principles of evidence and procedure. Fried v. United States (S.D.N.Y.) 212 F.Supp. 886, 896 and cases therein cited. The same objection was applied to the testimony of W. R. Atkins, with regard to his testimony of his investigation of the American Sugar Company, which was hearsay in respect to plaintiff. But the facts involving plaintiff to which he testified in regard to Clearfield—that American has no contract with Clearfield, that American pays Van Hook a commission, and that Clearfield was extended a payment plan which was passed on to its deliveries—were either amply covered by other evidence of record or else supported findings which were not necessary to the decision of the Commission. The same reasoning applies to his testimony with regard to another sugar refiner, South Coast.

5. The testimony of B. J. Schreier, district supervisor for the Bureau of Motor Carriers of the Interstate Commerce Commission who investigated plaintiff's operations from June-July 1960 through January 1961 was perhaps crucial. His testimony showed a low amount of sugar warehoused by plaintiff, the arrangement of all sales by Van Hook prior to hauling and delivery; the nearly total absence of sugar sales by plaintiff; that markup varied according to the distance hauled; that Clearfield used the 2-payment plan of the refiners; that Van Hook purported to sell to "Clearfield and no one else" and that Van Hook said his arrangement with Clearfield extended over a 2 to 3 year period. Schreier also identified certain confirmations of sale which tended to prove that the sale was actually negotiated directly between Van Hook and his customers. Practically all the other evidence of record is consistent with and corroborates the testimony of Schreier. Plaintiff did adduce testimony that the refiner established sugar prices which varied geographically to meet varying degrees of competition in different areas, but there was no evidence that such variance was in relation to the distance hauled, nor otherwise that such was the reason for the prices charged by Clearfield, which were directly related to the distance hauled. Even Clearfield's general manager testified that only one sugar sale had ever been made by plaintiff, and that as long ago as 1955. The buyers of sugar were nearly unanimous in agree-

the plaintiff had ample opportunity to cross-examine all adverse witnesses and to present testimony in its own behalf, of which opportunities it fully and effectively availed itself.

■ On the third consideration— whether the findings of fact are supported by substantial evidence—the Commission found that "Clearfield's interstate sugar hauls move from the New Orleans area either to its Clinton warehouse for use in its cheese processing business or directly to customers located in southeastern Missouri within 125 miles of Clinton"; that any carriage for its use in its cheese processing business is private and exempt from the Act, but the latter is condemned by the Act because performed with the purpose of profiting from the transportation performed. It was found that Clearfield does not actively solicit customers for sugar or advertise sugar and that it transports only sugar that is purchased under pre-existing orders arranged by the broker Van Hook; that any profit made constitutes a profit from transportation, which is a secondary business enterprise. Such findings are overwhelmingly supported by the evidence set out above. There is no substantial evidence of record to support contrary findings. Plaintiff's general manager's testimony to the effect that the hauling of sugar was in the furtherance of primary business because it was an added feature of service to those who were current or prospective customers is inconsistent with the testimony of those who state that they receive sugar from Clearfield trucks without being so-

licited by it for the purchase of any products. Clearfield Cheese asserts that the hearing examiners of the Commission erred in failing to find that the primary business of Clearfield "embraces the manufacture, processing, packaging, labeling, sale and/or distribution of sugar and canned goods, as well as the various commodities described in evidence." Clearfield argues that Clearfield is engaged in three principal activities, (1) sale of its manufactures, (2) sale of products purchased for resale and (3) private labeling of is own products and "products of others for resale." Clearfield therefore attempts to reach the conclusion that it sold the sugar and canned goods on its own account on the basis of one of its officer's testimony to the effect that demand of customers for by-products prompted Clearfield to begin selling sugar; that when it did so, it could not buy from a refinery and was therefore forced to buy from the broker Van Hook who was then the "exclusive sales agent" for the area; that Clearfield warehoused sugar "anywhere from 90,000 to 150,000 pounds at any one particular time"; that some sugar customers picked up their sugar directly at the warehouse at Clinton; that some of it was sold in less than truckload quantities here and there, but it was never invoiced because it "isn't a common practice in the food business to invoice merchandise before it's delivered"; that the sugar transportation was incorporated on the same truck with cheese to customers because of the "competitive situation"; and that it was Clearfield's desire to sell the sugar under its own label, and that, accordingly it had attempted to

ing that the sugar was bought from Van Hook, who also solicited their orders, that Clearfield did not solicit them for sugar, and that they were indifferent with regard to who delivered the sugar, though they paid Clearfield according to the payment plan which the refiner gave Clearfield. Some of the buyers of sugar otherwise did no business with Clearfield and were solicited by it for none (Consumers Warehouse Markets, Inc., had done no other business with plaintiff for 18 months than accept sugar deliveries. L. B. Everett had not for 2 years. Hiland Dairy

did not otherwise handle Clearfield products, nor did G. D. Milligan Grocery.) No advertising of sugar was done by Clearfield, according both to the testimony and a sample of a price list circular used by Clearfield.

There was also testimony that Clearfield sustained the loss for damage in transit. However, this conclusory testimony was outweighed by testimony which showed, in several instances, that a "short load" was reported on the invoices, confirmations and other pertinent documents to have been delivered.

arrange with the sugar companies to put the Clearfield label on the sugar, but it was refused permission to do so.

This testimony, however, was in the judgment of the Commission outweighed by the testimony which indicates that the profit gained was solely from transportation.[6] Thus, the Commission properly found that the only possible purpose of the sugar hauling, which was continued where no business could be done directly with the refineries, was to obtain revenue from transportation to reduce the costs of backhaul. Further, there was no investment in facilities for sugar selling, and no employment of salesmen for that purpose. For that reason it is apparent that the fourth standard has been met and that the findings of fact were sufficient to resolve the material crucial issues.[7]

Clearfield contends that the Commission did not apply the correct legal standards consonant with the fifth standard above. The Commission chiefly relied on Church Point Wholesale Bev. Co. v. United States (W.D.La.) 200 F.Supp. 508. In that case, the facts essentially were as follows:

"Plaintiffs employ their own motor vehicles to perform several transport functions. First, they utilize their vehicles to pick up merchandise from suppliers located outside the State of Louisiana for movement back to their warehouse facilities for storage and re-distribution. Secondly, plaintiff's vehicles are used to transport merchandise for general distribution to customers in their respective trade areas. Lastly, the equipment is used to pick up sugar from Louisiana sugar refineries for movement to consignees located in the same vicinity where merchandise is purchased for the replenishment of warehouse stock." 200 F. Supp. at 511.

There, as in this case, the sugar was hauled "solely for the purpose of * * * eliminating the cost of dispatching an empty vehicle to the supplier to pick up merchandise"; a broker arranged both for the purchase of sugar by plaintiff from the refinery and for sale of the sugar by plaintiffs at northern points; the sugar was hauled after such arrangements were made; plaintiffs did not pay the broker any commission, but rather all commissions came from the refiner; and the plaintiffs for their transportation received the difference "between the price they agree with Fox to pay for the sugar at the refinery and the price at which they agree with Fox to sell the sugar at the customers' plants." 200 F.Supp. at 511. Plaintiff here contends that the Church Point case is not in point because in the case at bar Clearfield was in the business of wholesaling sugar; because in the Church Point case the movement of the sugar was always outbound from its trade territory, while Clearfield

---

6. The testimony showed, for example, the markup per 100 pound of sugar moving from New Orleans to Springfield, Willow Springs and Nevada, Missouri, was 50 cents, to El Dorado Springs, Missouri, 55 cents and to Clinton, Missouri, 60 cents. (Tr. 65).

7. The care with which the Commission ascertained that its final order was supported by substantial evidence is exemplified in the fact that it did not find that plaintiff had made any of the proscribed haulings with regard to salt or canned goods. With respect to canned goods, this meant that the recommended order of the hearing examiners was not accepted by it. The Commission's final order read in this respect:

"Turning next to Clearfield's dealing in salt and canned goods, it appears to us that the question of the status of such transportation has been subordinated to the larger and economically more important question of the lawfulness of respondent's sugar activities, and that the facts bearing upon this issue are not here set forth in sufficiently bold relief to permit effective analysis. No evidence has been adduced, for example, as to Clearfield's arrangements with or relation to the salt manufacturers. Nor is there any evidence relating to that respondent's transportation of canned goods in recent years, such transportation apparently having ceased 2.5 to 3 years prior to the hearing."

hauled sugar inbound into its trade territory; and because in *Church Point* "the transportation of sugar was performed solely to produce a balanced operation and recoup backhaul costs." The first and third points are without merit in view of the findings of fact, amply supported by substantial evidence, which were made by the Commission. The evidence clearly showed that plaintiff was not in fact in the business of wholesaling sugar. The only testimony which Clearfield offered on the point was that of its General Manager, Tate, who substantially testified that Clearfield would like to be in such wholesaling business, but that the operations of the refineries and brokers prevented it from so engaging. Similarly, on the third point, Tate's testimony that a partial reason for hauling the sugar was to offer customers of its other products an added accommodation in order better to meet competition is overborne by testimony of some of the buyers that they only received sugar and no other products from Clearfield and, in fact, were solicited by Clearfield for no products. The second consideration—whether the movement was outbound or inbound—is not a material distinction in either this case or the *Church Point* case. In the *Church Point* case, the direction of the transportation was a minor feature pointed out to buttress a conclusion that *Church Point* was not marketing the sugar itself to its own customers. This feature was not a controlling one. The overwhelming weight of the evidence supports the findings of the Commission on the critical issues.

A more recent decision of the United States Supreme Court, however, is relatively clear on facts like those involved in the case at bar. In Red Ball Motor Freight v. Shannon, 377 U.S. 311, 319, 84 S.Ct. 1260, 1265, 12 L.Ed.2d 341, the Supreme Court noted that the legislative history of the governing section of the Act indicates that it meant to outlaw buy-and-sell agreements. The court then characterized such an operation thus:

"A typical buy-and-sell arrangement is one under which the character 'buys'

property at a shipping point, transports it to a delivery point and there 'sells' it to the real purchaser, the 'profit' to the carrier amounting to the price of the transportation between the two points." 377 U.S. at 313–314, 84 S.Ct. at 1262.

It was also stated that Congress meant to codify the "primary business test" wherein "The critical determination made in each case was between spurious buy-and-sell arrangements, whether or not as a part of backhaul, and a true wholesaling operation utilizing the operator's own trucks." And a "primary business" in such a case is described as a "bona fide non-carrier business enterprise" *Id.* 377 U.S. at 316, 84 S.Ct. at 1263, 12 L.Ed.2d at 345. Further, the following are given as indicia of a spurious secondary enterprise, and all are in the present case:

"In developing and applying the primary business standard, the ICC has elaborated criteria characteristic of the spurious buy-and-sell device. Among these are the large investment of assets or payroll in transportation operations; negotiating the sale of goods transported in advance of dispatching a truck to pick them up; direct delivery of the transported goods from the truck to the ultimate buyer, rather than from warehoused stocks; solicitation of the order by the supplier rather than the truck owner; and inclusion in the sales price of an amount to cover transportation costs." 377 U.S. at 318–319, 84 S.Ct. at 1264, 12 L.Ed.2d at 346–347.

In the *Shannon* case the Court determined that it was proper under the Act for a wholesaler to contract to haul sugar back toward its warehouse from a refinery where it negotiated for and made bona fide sales thereof to retailers on the route back. That situation, however, is a different case than that at bar in which the sale was made by Van Hook prior to the pickup of the load by plaintiff Clearfield. It is thus apparent that the correct legal standards were applied by defendant in reaching its decision.

Further, as has been found above from a close scrutiny of the whole record, the application of the correct standards was made to findings of fact which were reliably made and supported by substantial evidence which was taken in a hearing characterized by fair and lawful procedures as defined in the Administrative Procedure Act. Further, all the regulations of the defendant which were applied were valid as applied, as has been pointed out above and no unlawful burden of proof was imposed on Clearfield.

It is therefore

Ordered that the challenged orders of the defendant Interstate Commerce Commission be, and they are hereby in all respects, affirmed. It is further

Ordered that the relief prayed for in the complaint herein be, and it is hereby, denied, and the costs herein taxed against the plaintiff.