UNITED STATES ET AL. *v.* CAPITAL TRANSIT COMPANY ET AL.

NO. 40.

Argued October 20–21, 1949.—Decided November 14, 1949.

*Philip Elman* argued the cause for the United States and the Interstate Commerce Commission, appellants in No. 40. With him on the brief were *Solicitor General Perlman, Assistant Attorney General Bergson, Joseph W. Bishop, Jr., William J. Hickey, Richard E. Guggenheim, Daniel W. Knowlton* and *Edward M. Reidy.*

*Manuel J. Davis* argued the cause for the Washington, Virginia & Maryland Coach Co., and *S. Harrison Kahn* argued the cause for the Alexandria, Barcroft & Washington Transit Co., and filed a brief for those appellants in No. 41.

*Samuel O. Clark, Jr.* argued the cause and filed a brief for the Capital Transit Co., appellee in Nos. 40 and 41. With him on the brief were *Edmund L. Jones, F. G. Awalt* and *Daryal A. Myse.*

*Lloyd B. Harrison* argued the cause for the Public Utilities Commission of the District of Columbia, appellee in Nos. 40 and 41. With him on the brief was *Vernon E. West.*

By special leave of Court *Henry E. Ketner* argued the cause and filed a brief for the State Corporation Commission of Virginia et al., as *amici curiae,* urging affirmance.

*John O'Dea* filed a brief as People's Counsel, Public Utilities Commission of the District of Columbia, appellee in No. 40.

PER CURIAM.

In *United States* v. *Capital Transit Co.*, 325 U. S. 357, we upheld the jurisdiction of the Interstate Commerce Commission to regulate certain of Capital Transit's bus and streetcar rates. The rates involved were in two different categories. Transit operated, as it still does, a bus and streetcar system within the District connecting the residential area with the central business area. It was also one of four bus companies carrying passengers from that central business area to the Pentagon Building and other Defense establishments located just across the Potomac in Virginia. Each day thousands of Government employees living in the District boarded Transit's streetcars near their residences, rode to the District's business area, and there transferred to one of the Virginia busses for carriage to the nearby Virginia establishments. In the above case we sustained a Commission order fixing a through fare for the entire trip between the District residential area and the Virginia governmental installations. Transit had strongly urged that its bus and streetcar transportation between residential and business areas, being wholly within the District, could not be treated as part of an interstate movement. For reasons stated in our former opinion we rejected Transit's contention, holding that the daily stream of Government workers from the District to Virginia and back again was an interstate movement and therefore subject to regulation by the Commission. This holding applied to Transit carriage even where Transit passengers traveled between the District and Virginia on other bus lines. Transit also contended that jurisdiction of the Commission was precluded by a proviso in § 216 (e) of the Motor Carrier Act exempting "intrastate transportation" of motor carriers from regulation by the Commission. This contention was repeated on motion for rehearing. We rejected it.

Our holding that Transit's part of the District-Virginia movements was "interstate transportation" necessarily made the § 216 (e) exemption inapplicable.

After our holding the Commission entered a new order putting into effect the rate order we had sustained. In the present cases, here on appeal from a three-judge District Court under 28 U. S. C. §§ 1253 and 2101 (b), the new order was enjoined[1] on the ground that Transit's transportation, which we had held to be interstate, had now become "intrastate." On the same ground, that court also held that Transit was exempt from Commission jurisdiction under the proviso in § 216 (e). The District Court also cited to support its ruling our recent decision in *United States* v. *Yellow Cab Co.,* 332 U. S. 218.

The District Court apparently took the position that changed conditions since our decision in the prior *Transit* case had deprived the Commission of its jurisdiction. When we sustained the Commission's order in that case, Transit was itself operating one of the four bus lines carrying Government workers from the District central business area to Virginia. It issued transfers to passengers on its busses and streetcars between the District business and residential areas. These transfers were good for rides on Transit's own District-Virginia busses, but Transit would not give transfers good on the three competitive lines. We adverted to and relied on this situation as one of the reasons supporting the Commission's requirement that Transit make similar arrangements for through fares with the other lines. April 1, 1947, Transit abandoned

---

[1] The District Court simultaneously enjoined enforcement of two subsequent related Commission orders. One order declined to permit cancellation of the prescribed through rates and schedules. 47 M. C. C. 205. The other increased the former prescribed maximum rates and provided for divisions of through fares among the companies carrying the District-Virginia passengers. 270 I. C. C. 651.

its District-Virginia bus line. Because of this the District Court held that since that date all of Transit's carriage of Virginia-bound passengers has been "intrastate transportation."

The District Court's annulment of the Commission's order on the above ground cannot stand. Our previous holding was that all of Transit's intra-District carriage of passengers bound to and from the Virginia establishments was part of an "interstate" movement and therefore subject to Commission regulation throughout, upon proper Commission findings. *United States* v. *Yellow Cab Co., supra,* does not conflict with our prior holding that Transit's transportation was part of a continuous stream of interstate transportation. We adhere to that holding. Transit's intra-District streetcar and bus transportation of passengers going to and from the Virginia establishments is an integral part of an interstate movement.

In support of the District Court's judgment it is urged that there was no substantial evidence to support the Commission's findings that its exercise of jurisdiction was necessary to a national transportation system "adequate to meet the needs of . . . the national defense." The argument seems to be that the Commission should have altered this finding made in the prior proceedings because the nation is no longer at war. Another factor pointed out is that there are now fewer Army and Navy workers who work in the Virginia installations. Neither of these arguments is sufficient to justify setting aside findings made by the Commission on this point. The evidence before the Commission in the two proceedings indicates that the same reasons exist for Commission action now as before. And despite attempted interference with the Commission's power by the Public Utilities Commission of the District, it is still true that neither the District

nor Virginia has adequate power to regulate the through rates for this daily stream of interstate travel.

It is also argued here that the orders should be set aside because they are confiscatory. But the record fails to show that this issue was properly presented to the Commission for its determination. Therefore the question of confiscation is not ripe for judicial review.

We have examined other contentions urged in support of the District Court's judgments and find that all are without merit.

The judgments of the District Court in these cases are reversed and the causes are remanded to it with directions to dismiss these actions.

*It is so ordered.*

MR. JUSTICE DOUGLAS took no part in the consideration or decision of this case.

THE CHIEF JUSTICE, MR. JUSTICE REED, and MR. JUSTICE JACKSON dissenting.

The opinion in our view bases the judgment on a holding "that all of Transit's intra-District carriage of passengers bound to and from the Virginia establishments was part of an 'interstate' movement and therefore subject to Commission regulation throughout, upon proper Commission findings." Since the Court does not rest the applicability of the Motor Carrier Act, 49 Stat. 543, to the Capital Transit Company on the existence of Transit's lines to Maryland, we, too, lay that problem aside. We understand the Court to assert that the statute empowers the Commission to enter the contested order whether or not Transit operates admitted interstate routes.

The present case differs from the former case involving the operations of the Transit Company. 325 U. S. 357. In the earlier case Transit served Virginia areas in com-

petition with other interstate operators of busses. As the operator of interstate routes selling through tickets on its own lines, Transit was required also to sell and accept through tickets that were good for passage on other interstate lines. Such obligation was imposed by § 216 (e), the section prohibiting anything "unduly preferential or unduly prejudicial," and § 216 (c), the section regulating charges for voluntary through rates. 325 U. S. at 362.

Now Transit does not operate the interstate routes to the Virginia points. It is not an interstate carrier over the route for which it now is required to sell through tickets. Therefore, the Court's opinion finds it necessary to rely upon the stream of passengers between the District and Virginia to put Transit under the Motor Carrier Act as engaged in interstate commerce so far as it transports, in the District, passengers with an ultimate out-of-state destination. We do not believe the Act permits such a construction.

Clearly the Act is limited to operations in interstate commerce.[1] Congress has not used the full extent of its commerce power to reach incidents affecting interstate transportation. It has emphasized a contrary intention by providing for the exclusion from the coverage of the Act, in certain situations, of interstate passenger traffic in a municipality, contiguous municipalities or adjacent zones. § 203 (b) (8). Likewise the Act specifically bars the Commission from regulating intrastate transportation

---

[1] "Sec. 202. (b) The provisions of this part apply to the transportation of passengers or property by motor carriers engaged in interstate or foreign commerce and to the procurement of and the provision of facilities for such transportation, and the regulation of such transportation, and of the procurement thereof, and the provision of facilities therefor, is hereby vested in the Interstate Commerce Commission."

on the ground that it affects interstate transportation.[2] Since the Motor Carrier Act does not regulate carrier activities that merely affect interstate commerce, we think the stream of commerce theory inapplicable.[3]  We cannot agree that intrastate carriage of passengers who have an intention to continue their journey across state lines by way of another and wholly unconnected company makes the first carrier a company engaged in interstate commerce under the Motor Carrier Act as to that transportation.

The Court's decision may have unfortunate results. Its unlimited language sweeps into the hands of the Commission the regulation of all local transportation that carries a large proportion of passengers destined for or arriving from out-of-state points.  For example, the Court's ruling would seem to include the New York City commuter traffic moving by local bus, subway and street-car service on its way to and from interstate busses.

---

[2] "That nothing in this part shall empower the Commission to prescribe, or in any manner regulate, the rate, fare, or charge for intrastate transportation, or for any service connected therewith, for the purpose of removing discrimination against interstate commerce or for any other purpose whatever." § 216 (e).

[3] See *McLeod* v. *Threlkeld*, 319 U. S. 491; *Labor Board* v. *Jones & Laughlin*, 301 U. S. 1; *Stafford* v. *Wallace*, 258 U. S. 495.