James CHRISTIAN, Norman Mench, James H. Mench, Jr., Francis Brewis, Leonard Hennlein, Jr., C. Backert and Ralph C. Michael, individually and on behalf of all other owner-operators of trucks as a class who are similarly situated

v.

UNITED STATES of America

and

The Interstate Commerce Commission.

Civ. A. No. 9631.

United States District Court
D. Maryland.

June 19, 1957.

---

Hugh J. Monaghan, II, and Eugene A. Alexander, III, Baltimore., Md., for plaintiffs.

Leon H. A. Pierson, U. S. Atty., and John R. Hargrove, Asst. U. S. Atty., Baltimore, Md., and Victor R. Hansen, Asst. Atty. Gen., James E. Kilday and Maurice

A. Fitzgerald, Attys., Dept. of Justice, Washington, D. C., for United States of America.

Robert W. Ginnane, General Counsel, and C. H. Johns, Asst. General Counsel, Washington, D. C., for Interstate Commerce Commission.

Before SOBELOFF, Circuit Judge, and CHESNUT and THOMSEN, District Judges.

THOMSEN, District Judge.

Plaintiffs seek to set aside sec. 207.4 (a) (3) of the rules issued by the Interstate Commerce Commission in Ex parte No. MC-43, 68 M.C.C. 553, 21 F.R. 9653, to govern the lease and interchange of vehicles by motor carriers. That section provides, with certain exceptions, that authorized motor carriers may utilize equipment they do not own only pursuant to a written contract with the owners which "shall specify the period for which it applies, which shall be no less than thirty days when the equipment is to be operated for the authorized carrier by the owner or the employee of the owner." Plaintiffs are truck owners, commonly known as "gypsies", who do not hold any certificate from the Commission, but who, until sec. 207.4 became effective on April 2, 1957, leased their equipment to authorized carriers under "trip leases". Such leases ordinarily covered both truck and driver. The owners frequently operated the trucks themselves; in other cases they employed the drivers. Plaintiffs challenge the thirty day requirement of the new rules.

In 1935, Congress enacted the Motor Carrier Act, now Part II of the Interstate Commerce Act, 49 U.S.C.A. § 301 et seq. At that time "the industry was unstable economically, dominated by ease of competitive entry and a fluid rate picture. And as a result, it became overcrowded with small economic units which proved unable to satisfy even the most minimal standards of safety or financial responsibility". American Trucking Associations v. United States, 344 U.S. 298, at page 312, 73 S.Ct. 307, at page 316, 97 L.Ed. 337.

Neither the act nor the regulations adopted by the Commission pursuant thereto prohibited authorized carriers from leasing equipment from other persons, and many carriers operated leased equipment, some to a great extent, others less frequently. The practice gave rise to various abuses: prescribed safety requirements were often ignored, and undesirable effects on the economic stability of the industry were noted. See discussion of these "satellite practices" and their effects in American Trucking Associations v. United States, supra, 344 U.S. at pages 305–306, 312–313, 73 S.Ct. at pages 312, 315–316; Senate Report 1271, 84th Cong., 1st Sess., p. 2. The Commission decided to make a thorough study of the problem and to adopt appropriate rules.

Accordingly, Division 5 of the Commission instituted an investigation known as Ex parte No. MC-43, Lease and Interchange of Vehicles by Motor Carriers, by a Notice of Proposed Rule-making, published in the Federal Register on January 27, 1948, 13 F.R. 369. All authorized carriers were made parties to the proceeding, and many interested individuals, corporations, and groups were granted leave to intervene. Formal hearings were held in Washington, D. C., and St. Louis, Missouri; much testimony was taken; briefs were filed on behalf of many firms and associations, discussing various provisions of the proposed rules, including the rule dealing with Augmenting Equipment; the examiner's proposed report was served on all parties; and exceptions to the proposed report and replies to the exceptions were filed. A report of the Commission, Division 5, was filed on June 26, 1950, 51 M.C.C. 461, 15 F.R. 4338; certain provisions of the proposed rules were approved; others were modified or eliminated. Petitions for reconsideration and replies thereto were filed, oral argument was had before the full Commission, and on May 8, 1951, a report and order entitled "Report of the Commission on Oral Argument" was filed, 52 M.C.C. 675, 16 F.R. 4804. This report, which dealt primarily with the

rules and regulations to be observed by motor carriers and contract carriers in the leasing and interchange of motor vehicle equipment, modified the findings of the Division. The rules and regulations prescribed by the full Commission required, with certain exceptions, that equipment leases be in writing and extend for a minimum period of thirty days. The Commission was convinced that "trip leasing, and especially trip leasing of equipment that is operated for the lessee by the owner, or employees of the owner, is inimical to sound regulation and proper administration of the provisions of part II of the act and of our safety regulations. * * * Some minimum period is necessary to insure proper inspection of equipment and a check of the qualifications of the driver, particularly when the latter is not an employee of the lessee, and we find that a minimum period of 30 days would be reasonable." 52 M.C.C. 1725. Petitions for reconsideration were considered and denied, but the effective date of the order was postponed at the request of one of the three-judge district courts before whom suits to test the validity of the rules were instituted. Some of the cases reached the Supreme Court in 1952 and were decided sub nom. American Trucking Associations, Inc., v. United States, on January 12, 1953, 344 U.S. 298, 73 S.Ct. 307, 97 L.Ed. 337. The Supreme Court held that the rules, including the thirty day provision of sec. 207.4(a) (3), were valid as a reasonable exercise of the rule-making power conferred on the Commission by the Interstate Commerce Act, despite the absence of specific reference to leasing practices in that act at that time. See 344 U.S. at page 312, 73 S.Ct. at page 315.

Many of the rules became effective on September 1, 1953; but certain provisions of the rules, including sec. 207.4(a) (3), did not become effective at that time, largely because of opposition from various farm organizations, which contended, inter alia, that the thirty day provision would make it impossible for haulers of exempt agricultural commodities to obtain a return trip load of non-exempt commodities. Additional testimony was taken and many hearings were held. The rules were amended several times, 18 F.R. 3022, 4619, 7800; and the effective date of sec. 207.4(a) (3) was successively postponed, 18 F.R. 4504, 4929, 7800; 20 F.R. 921, 8639, 21 F.R. 695. An examiner of the Commission recommended an additional two-year study of the effect of trip leasing on safety, but this recommendation was not adopted by either the Division or the Commission. In its October 6, 1955, report on further hearing, 64 M.C.C. 361, 20 F.R. 7905, the entire Commission reaffirmed the thirty day requirement. However, on June 18, 1956, the Commission postponed the effective date of sec. 207.4(a) (3) until its further order, in view of certain legislation then pending before Congress, 21 F.R. 4628.

On August 3, 1956, Congress enacted Public Law 957, 70 Stat. 983, which amended sec. 204 of the Interstate Commerce Act, 49 U.S.C.A. § 304(e) and (f). The new law expressly empowers the Commission to prescribe leasing and interchange regulations, subject to the exception that the Commission may not regulate the duration of any such lease, contract or other agreement covering certain vehicles used in transporting certain agricultural commodities and products.

On November 23, 1956, the Commission issued amended rules governing the Lease and Interchange of Vehicles by Motor Carriers, to become effective on February 1, 1957. 68 M.C.C. 553, 21 F.R. 9653.

Sec. 207.4(a) (3) of these rules provides that (except for certain equipment interchanged between authorized carriers and certain vehicles used in transporting exempt agricultural commodities) authorized carriers may utilize vehicles which they do not own only pursuant to a written contract with the owner which "shall specify the period for which it applies, which shall be not less than 30 days when the equipment is to be operated for

the authorized carrier by the owner or employee of the owner".[1]

On January 31, 1957, the United States District Court for the Southern District of Indiana, in Key Hancock Trucking, Incorporated v. United States and Interstate Commerce Commission, Civil Action No. IP 57–C–37, issued a temporary restraining order restraining the Commission from putting into effect the thirty day requirement of sec. 207.4(a) (3) for a period of sixty days. The restraining order in that case was not extended, and on April 2, 1957, that Court dismissed the complaint upon the plaintiff's motion. Accordingly, sec. 207.4(a) (3) became effective on April 2, 1957. The complaint in this case was filed on April 9, 1957.

Plaintiffs contend (1) that they, and others similarly situated, were never notified or heard by the Commission "concerning their position on said order"; (2) that the order is arbitrary and capricious; (3) that Public Law 957, August 3, 1956, 49 U.S.C.A. § 304(e) and (f), is discriminatory in nature, is class legislation, and, therefore, is unconstitutional as applied to plaintiffs; and (4) that the effect of the thirty day requirement is confiscatory as to them.

I. The thirty day requirement of sec. 207.4(a) (3) of the Lease and Interchange Rules was issued and made effective after repeated notices of proposed rule-making and rule-making procedures, published in the Federal Register, in accordance with sec. 4(a) of the Administrative Procedure Act, 5 U.S.C.A. § 1003 (a). The original notice was entitled "Lease and Interchange of Vehicles by Motor Carriers", and expressly stated that among the matters to be considered was whether "(a) the renting of vehicles by or to motor common and contract carriers, with or without driver, should be limited to long term leases". 13 F.R. 369. Owner-operators who leased their vehicles to authorized carriers did in fact participate in the proceedings before the Commission. The testimony of owner-operators is discussed in the report of the Commission, Division 5, dated June 26, 1950, 51 M.C.C. 461, at 479–482, 543–544, and in the reports of the entire Commission dated May 8, 1951, 52 M.C.C. 675, at 690–692, and October 6, 1955, 64 M.C.C. 361, at 380.

1. Sec. 207.4(a) (3) of these rules provides that:

"§ 207.4 *Augmenting equipment.*— Other than equipment exchange between motor common carriers in interchange service as defined in § 207.5 of these rules, authorized carriers may perform authorized transportation in or with equipment which they do not own only under the following conditions:

"(a) *Contract requirements.*—The contract, lease, or other arrangement for the use of such equipment—

* * * * *

"(3) *Minimum duration of 30 days when operated by lessor.*—Shall specify the period for which it applies, which shall be not less than 30 days when the equipment is to be operated for the authorized carrier by the owner or employee of the owner; *excepting:*

"(i) *Equipment used in agricultural or perishable operations.*—That such 30-day minimum period shall not apply to equipment, with driver, of a farmer, agricultural cooperative or private carrier of certain perishable property or which is exempt under section 203(b) (6) of the act, to the extent that such equip-

ment falls within the terms of the exceptions of section 204(f) (1) or (2) of the act (49 U.S.C. 304(f)), and is utilized in accordance therewith; provided, that prior to the execution of the lease, the authorized carrier receives and retains a statement signed by the owner of the equipment, or someone duly authorized to sign for the owner, authorizing the driver to lease the equipment for the movement or movements contemplated by the lease, certifying that the equipment so leased meets the qualifications enumerated in section 204(f) (1) or (2), of the act, and specifying the origin, destination, and the time of the beginning and ending of the last movement which brought the equipment within the purview of section 204(f).

"(ii) *Automobile and tank truck carriers.*—That equipment owned by an automobile carrier or tank truck carrier or held by such authorized carriers under lawful leases and used in the transportation of motor vehicles or liquid commodities, in bulk, respectively, may be leased or subleased to other such authorized carriers."

In American Trucking Associations v. United States, supra, sustaining the validity of the Leasing and Interchange Rules, including the thirty day requirement of sec. 207.4(a) (3), as it then read, the Supreme Court said: "There is no question but that the Federal Register notice and participation requirements were satisfied." 344 U.S. at page 319, 73 S.Ct. at page 319.

After the Supreme Court's decision in American Trucking Associations v. United States, the Commission, on December 3, 1953, published a notice, 18 F.R. 7802, re-opening the proceeding for further hearing with respect to "those provisions of Section 207.4(a) (3) * * which require that any contract, lease or other arrangement for the use of equipment shall specify a period 'which shall be not less than 30 days'." On March 31, 1954, the Commission published another notice, 19 F.R. 1764, reciting that the proceeding had been reopened as to the 30 day requirement of sec. 207.4(a) (3) and setting the matter for hearing before a hearing examiner commencing April 14, 1954.

Following that hearing, the entire Commission issued another report, dated October 6, 1955, in which it specifically considered evidence adduced by owner-operators at both initial and further hearing, 64 M.C.C. 361, at 380. In this report, the Commission reaffirmed the thirty day requirement of sec. 207.4(a) (3), with certain exceptions for vehicles used in transporting exempt agricultural commodities under sec. 203(b) (6), and for equipment used in transporting motor vehicles or bulk liquid commodities leased from one authorized carrier to another. The effective date of this order was postponed until Congress acted on the bill which became Public Law 957, August 3, 1956.

On November 23, 1956, upon the exhaustive record theretofore made in the proceedings, the entire Commission issued its Supplemental Report, 68 M.C.C. 553, reaffirming the thirty day requirement of sec. 207.4(a) (3), with the agricultural exception required by Public Law 957, and with the exceptions for transporting motor vehicles and bulk liquids which were included in the 1955 report.

Plaintiffs argue that after Public Law 957 was passed, the Commission had no authority to pass any further orders in Ex parte No. MC–43, but had to start afresh. There is no merit whatever in this point. The Commission had been considering the lease and interchange rules, including the proposed thirty day provision, for a period of eight years, had received and considered a great volume of evidence, had heard arguments from parties representing many divergent points of view, had made findings and formulated rules, but had suspended the effective date of some of the rules. On November 23, 1956, the Commission modified those rules to comply with the requirements of Public Law 957. See Supplemental Report of the Commission, 68 M.C.C. 553 et seq. No additional hearings were held after Public Law 957 was passed; none were necessary. The jurisdiction of the Commission to issue the rules did not depend upon Public Law 957, but was within the general power of the Commission to issue rules and regulations. American Trucking Associations v. United States, supra, 344 U.S. at page 312, 73 S.Ct. at page 315.

■ II. Plaintiffs contend that the thirty day requirement of sec. 207.4(a) (3) is arbitrary and capricious, and has no reasonable relationship to the public health, morals, safety or convenience. Similar contentions were made by the plaintiffs in American Trucking Associations v. United States, but were rejected by the Supreme Court. Under the heading of "Reasonableness of Rules and Exemptions Therefrom", the Court said: "The relationship of these rules to the regulatory scheme they are designed to protect forms a basis for the answer to the various allegations that certain rules are arbitrary. For our purposes, such an argument must mean that the Commission had no reasonable ground for the exercise of judgment. In the instant case, such is not the situation; the evi-

dence marshalled before the Commission plainly supports the conclusion that the continued effectiveness of its regulation requires the rules prescribed." 344 U.S. at page 314, 73 S.Ct. at page 317.

In its 1955 report on further hearing, 64 M.C.C. 361, the Commission reaffirmed the thirty day requirement, saying, p. 381: "The salutary objectives of that rule we think bear repeating. They are to insure responsibility for, and control over, leased equipment by the lessee carrier, when the equipment is operated by the owner or employees of the owner. These are basic requirements that are inherent in the relation of the for-hire carrier to the public. When they are lacking, the chaotic conditions that preceded enactment of the Motor Carrier Act, 1935 inevitably ensue."

In its report of November 23, 1956, 68 M.C.C. 553, the Commission stated, p. 555: "It is clear that the hard core of the problem confronting the Commission * * * has been the owner-operator trip lease and its attendant evils, such as widespread indifference to carrier responsibility, to safety of operations, and to the scope of carrier operating authority."

A recent case in this court, United States v. E. Brooke Matlack, 149 F.Supp. 814, opinion by Judge Chesnut, is illustrative of the evils which the Commission found all too often associated with trip leasing.

It is not our function to decide whether the present rule is the most appropriate and effective method of dealing with those evils. We can only say, on the record before us, that the evidence marshalled before the Commission is sufficient to support its conclusion that the continued effectiveness of its regulation requires the rules prescribed.

■ Plaintiffs contend that the unreasonableness of the thirty day requirement is demonstrated by the exemptions allowed by the Commission in the case of certain vehicles hauling or having hauled certain agricultural commodities, transporting other motor vehicles, or transporting bulk liquids. The agricultural exemption was required by the provisions of Public Law 957, August 3, 1956, 49 U.S.C.A. § 304(f) (2), which will be discussed in III below. A similar exemption had been included in the earlier draft of the rule for reasons stated by the Commission in its report dated October 6, 1955, 64 M.C.C. 361. The reason for the partial exemption for automobile carriers and tank trucks is also explained in that report. The highly specialized nature of the operations of these two types of carriers reduces to a minimum the evils which the prohibition against trip leasing was designed to prevent. Moreover, the exemption is applicable only in cases of leases between regulated carriers. A lease between a regulated and a nonregulated carrier must be for at least thirty days. These exemptions do not make the regulations discriminatory, arbitrary or capricious.

■■ III. Closely related to the previous point is plaintiffs' contention that Public Law 957 is "discriminatory in nature and class legislation and is, therefore, unconstitutional as applied to these particular plaintiffs". Their complaint is based upon the fact that sec. 204(f), as amended by Public Law 957, exempts from the operation of the thirty day rule certain leases of equipment hauling or having hauled certain agricultural products. Plaintiffs argue that this exemption is so unreasonable as to invalidate sec. 204(e) and (f). But the power of Congress to classify or select the objects of regulation, to regulate some persons while exempting others, upon a rational basis, has long been settled. Currin v. Wallace, 306 U.S. 1, 13–14, 59 S.Ct. 379, 83 L.Ed. 441; United States v. Petrillo, 332 U.S. 1, 8, 67 S.Ct. 1538, 91 L.Ed. 1877. The peculiar problems of agriculture have been frequently recognized in exemptions from regulatory statutes, and such exemptions have been held not to invalidate those statutes. See e. g. Steward Machine Co. v. Davis, 301 U.S. 548, 584–585, 57 S.Ct. 883, 81 L.Ed. 1279.

Public Law 957 originated as S. 898, 84th Cong. The report of the Senate

Committee on Interstate and Foreign Commerce on S. 898 (Sen.Rep. 1271, 84th Cong., 1st Sess., p. 2), after summarizing the evils of trip leasing generally, concluded that the marketing of agricultural commodities required "a highly flexible motor transportation service" which would be impaired by the thirty day requirement. It was made clear that the proposed legislation was not intended to take from the Commission the power to regulate the duration of leases of other vehicles. The report of the House Committee on Interstate and Foreign Commerce, H.Rep. 2425, 84th Cong., 2d Sess., U.S.Code Congressional and Administrative News 1956, p. 4304, was to the same effect.

The reasonableness of the classification, i. e. the agricultural exemption provided by sec. 204(f), is supported by the extensive record before the Commission and the Commission's findings in its 1955 report on further hearing, 64 M.C.C. 361, as well as by the testimony received in hearings before the Senate and House Committees on Interstate and Foreign Commerce prior to the enactment of Public Law 957.

 IV. Plaintiffs complain that the thirty day provision will prevent them from making any leases of their equipment and is, therefore, confiscatory. They proffered evidence tending to prove: that since April 2, 1957, it has been impossible for most of them and others in their position, to make any leases of their equipment, with drivers, because it is not economically feasible for authorized carriers to make such leases for thirty days or more; that there is no practical possibility of leasing out their equipment, without drivers, at rates which will cover the monthly instalments of purchase price still due on much of the equipment; that, as a consequence, an enormous quantity of equipment is lying idle, and cannot even be sold except at a ruinous loss; that thousands of independent truckers in their position will be forced out of business, will lose their equipment, and will have to become truck drivers for the large carriers. We do not doubt that

these results will follow for many persons in the position of the plaintiffs. But this court is without power to prevent it, under the circumstances. The function of this court is to review the action of the Commission, not to try the case *de novo*. Mississippi Valley Barge Line v. United States, 292 U.S. 282, 286, 54 S.Ct. 692, 78 L.Ed. 1260; American Trucking Associations v. United States, 344 U.S. 298, 321, 73 S.Ct. 307, 97 L.Ed. 337. Even where plaintiffs raise a constitutional question, such as confiscation, they must show that they sought to raise the matter before the Interstate Commerce Commission and that the Commission denied them the opportunity to submit evidence in support of their claims. American Trucking Associations v. United States, supra, 344 U.S. at page 320, 73 S.Ct. at page 319; United States v. Capital Transit Co., 338 U.S. 286, 291, 70 S.Ct. 115, 94 L.Ed. 93; State of New York v. United States, 331 U.S. 284, 335, 67 S.Ct. 1207, 91 L.Ed. 1492; Assigned Car Cases, 274 U.S. 564, 583, 47 S.Ct. 727, 71 L.Ed. 1204. In American Trucking Associations the Supreme Court held that the lower court properly refused to receive evidence offered to show confiscation. The Court said:

"* * * The claim of confiscation must be substantial, the import of the proffered evidence clear, and the inability to test the question before the Commission patent, in order to justify an oral hearing on the question in the courts. In the case at bar, appellants seek in substance to show that the outlawing of trip-leasing will affect their business; perhaps they might even be able to prove that some concerns would fail if they were unable in the future to resort to nonowned equipment for short periods. In this context, however, we do not think that a right to trial *de novo* is automatically established merely because the Commission denied a petition for rehearing which invoked constitutional principles. In the first place, there was in truth a multitude of evidence

before the Commission on the importance of trip-leasing to some concerns. Moreover, we are clear that appellants had an opportunity to introduce this very evidence in the agency proceedings, for it required no great prescience, in view of the notice of the hearings published by the Commission, to know that they would concern the importance and desirability of the very practices appellants seek to protect.

" 'Confiscatory' is not a magic word. Whether it should open the door to further proceedings depends on the nature of the order attacked. We think a claim of rate confiscation, which was the concern of the cases just cited, stands on a fundamentally different footing from that made in the instant case." 344 U.S. at page 321, 73 S.Ct. at page 320.

Plaintiffs suggest that they were not "interested parties" entitled to intervene before the Commission. There is no merit in this contention. If they have sufficient interest in the matter to prosecute this case, they had sufficient interest to intervene and be heard before the Commission. No showing has been made that any plaintiff or any one in their position attempted to intervene before the Commission and was denied that right.

In American Trucking Associations, the Supreme Court concluded:

"They attack an order which is valid even if its effect is to drive some operators out of business. As we have indicated, the rule-making power is rooted in and supplements Congress' regulatory scheme, which in turn derives from the commerce power. The fact that the value of some going concerns may be affected, therefore, does not support a claim under the Fifth Amendment, if the rules and the Act be related, as we have said they are, to evils in commerce which the federal power may reach." 344 U.S. 322, 73 S.Ct. 320.

We must reach the same conclusion in this case.

Petition dismissed.