KING VAN LINES, INC., Plaintiff,

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants,

Aero-Mayflower Transit Company, Inc., Intervening Defendants.

Civ. No. W-2513.

United States District Court
D. Kansas.

July 18, 1963.

W. T. Brunson, Oklahoma City, Okl., and Kidwell, Ball, Green & Nohe, Wichita, Kan., for plaintiff.

Lee Loevinger, Asst. Atty. Gen., John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., Newell A. George, U. S. Atty., Topeka, Kan., Robert W. Ginnane, Gen. Counsel, Fritz R. Kahn, Asst. Gen. Counsel, I. K. Hay, Assoc. Gen. Counsel, Interstate Commerce Commission, Washington, D. C., for defendants.

Warren N. Grossman, Knapp, Gill, Hibbert & Stevens, Los Angeles, Cal., James F. Miller, John E. Jandera, Kansas City, Mo., John E. Jandera, Townsend, Jandera & Hope, Topeka, Kan., G. F. Gunn, Jr., La Tourette & Rebman, St. Louis, Mo., for intervening defendants.

Before HILL, Circuit Judge, and STANLEY and DAUGHERTY, District Judges.

DAUGHERTY, District Judge.

This statutory three-judge case is an action under Title 28, United States Code, Sections 1336, 1398, 2284 and 2321 through 2325, in which the plaintiff seeks to annul and set aside the report and orders of the Interstate Commerce Commission entered on January 11th, June 14th, and October 6th, 1961, in Consolidated Dockets No. MC–C–2399, King Van Lines, Inc., Investigation and Revocation of Certificate, and No. MC–70272 (Sub-No. 18), King Van Lines, Inc., Extension-El Paso, Texas, in which the Commission found that the plaintiff was engaged in · the transportation of household goods not authorized by its certificate, and that it had failed to establish that the present or future public convenience and necessity required a grant of authority which would validate such operations.

The plaintiff is a motor carrier of household goods with the following Interstate Commerce Commission certificate of authority:

"Between Bisbee, Arizona, and points in Arizona within fifty miles of Bisbee, on the one hand, and, on the other, El Paso, Texas, all points in Arizona and New Mexico, and those in California on and south of a line extending from Needles along U. S. Highway 66 to Los Angeles, and points in the Los Angeles Commercial Zone as defined by the Commission north of U. S. Highway 66."

The Examiner and the Interstate Commerce Commission at their respective hearings held that such authority was a radial authority which allowed the origination of shipments at the base point (Bisbee or points in Arizona within 50 miles of Bisbee), and their termination at a point within the destination territory (El Paso, Texas, Arizona, New Mexico and Southern California), or vice versa. Further, the Examiner and Commission held that such radial authority does not allow cross-hauling, that is,

movements from one point in the destination territory to another point in the destination territory even though the route is through the base point.

' The plaintiff at the hearings before the Examiner and Commission, took the position that the above authority was a non-radial authority which allowed operations from, to and between any point in the destination territory without regard to a base point.

Apparently based on complaints that the plaintiff was operating in excess of its authority, Division 1 of the Commission on October 7, 1958, instituted an investigation into the legality of the operations being conducted by plaintiff within its area.

Plaintiff thereupon promptly filed an application with the Commission for non-radial authority to transport household goods between El Paso, Texas, and points in Arizona, New Mexico and California.

These two matters were consolidated and heard by an Examiner on January 28, 29 and 30, 1959, after the Commission's Bureau of Inquiry and Compliance and several motor carriers of household goods had intervened.

The Examiner found that plaintiff had been conducting non-radial operations not authorized by its certificate and that a cease and desist order should issue. The Examiner further concluded that this non-authorized operation had not been wilful and that the evidence of its past operations indicated that there was a continuing need for its services which need should be met by a grant of the non-radial authority for which the plaintiff had applied.

No one filed exceptions to the Examiner's findings that the plaintiff's certificate was a radial one and not a non-radial one, but the motor carrier protestants did except to the Examiner's finding that the plaintiff's violation of the Act had not been wilful and that the public convenience and necessity required plaintiff's grant of non-radial authority.

Division 1 of the Commission in its report following the report and recommend-ed order of the Examiner and which Commission report was filed on January 11, 1961, made the following significant finding:

"There is no question but that applicant's past operations other than those between the Bisbee 50-mile area, on the one hand, and on the other, El Paso, and points in Arizona, New Mexico, and California were unauthorized. We must, however, disagree with the examiner in other respects. Applicant's strained construction of the 'Bisbee' certificate heretofore described is untenable. It has been recognized consistently since the regulation of motor carriers that the words 'on the one hand,' and 'on the other' are words of extremity, and that they are used for the sole purpose of identifying the operations authorized as radial operations between a base point and other points in a described area, as distinguished from an unlimited non-radial operation between described points or all points within described areas. See Classification of Motor Carriers of Property, 2 M.C.C. 703, and Gay's Exp., Inc. v. Haigis and Nichols, 43 M.C.C. 277. It also has been well established that the holder of a certificate authorizing radial irregular-route operations alone is not authorized to perform crosshaul operations between points in a radial origin or destination territory even though the service is performed through the base point. Compare Akers Motor Lines, Inc., v. Malone Freight Lines, Inc., 53 M.C.C. 353 (356). In the light of these long and well established principles, we agree with protestants that no credence can be taken of applicant's justification of its unlawful operations. A carrier which holds operating authority from this Commission reasonably may be expected to familiarize itself with such of our decisions as established the principles governing the scope of that authority; particularly so, as here, when

the propriety of its operation is questioned. The record is clear that after 1953 the question of the lawfulness of the considered operations was brought to applicant's attention, and it was advised in 1957 by a field representative of the Commission that the considered operations under the 'Bisbee' authority were unlawful. In the circumstances such of the evidence with respect to a need for service as is predicated upon past operations beyond the scope of applicant's operating authority under the 'Bisbee' certificate will be afforded no consideration. See McBride's Exp., Inc., Extension—Illinois, 72 M.C.C. 32.

"The remaining evidence is wholly insufficient to justify a grant of the application. Ample services admittedly, are available to shippers in the considered territory, and the general statements by the supporting carriers and applicant's booking agents that a continuation of applicant's service is important to their businesses, or that applicant's operation provides satisfactory interline service do not constitute a showing that present services are inadequate. In the absence of such showing, the application will be denied." (See 84 M.C.C., 269, 275–6).

Plaintiff's petition for reconsideration was denied as was its petition for leave to file a second petition for reconsideration. Upon this action being filed with this court, the Commission postponed the effective date of its order of January 11, 1961, until the further order of the Commission.

With the foregoing background it appears that the Court is concerned with three matters, as follows:

First: Whether or not the plaintiff was operating in excess of its authority.

Second: Has the plaintiff established a present or future public convenience and necessity to support its application for non-radial authority, and,

Third: In considering these consolidated matters, was the Commission justified in refusing to give consideration to plaintiff's past operations beyond its certificate of authority in determining whether the present or future public convenience and necessity required a grant of plaintiff's application for non-radial authority.

■ Regarding the first matter, it appears clear that plaintiff was operating in excess of its authority and furthermore, that this court is not called upon to upset the findings in this respect by the Examiner and the Commission.

■ The authorities cited by the Commission in its order of January 11, 1961, demonstrate beyond doubt that the plaintiff's authority was a radial authority and not non-radial. The evidence reveals non-radial movements on the part of the plaintiff without contradiction. The legal principle is clearly established and the authorities are numerous that a motor carrier with a certificate authorizing radial operations alone is not authorized to perform crosshaul operations between points in a radial origin or destination territory even though the service is performed through the base point. Akers Motor Line, Inc. v. Malone Freight Line, Inc., 53 M.C.C. 353, 356 (1951); Malone Freight Lines v. United States, 107 F. Supp. 946 (N.D.Ala. (1952), aff'd Mem. 344 U.S. 925, 73 S.Ct. 497, 97 L.Ed. 712 (1953); Interstate Commerce Commission v. Southwest Freight Lines, 86 F. Supp. (W.D.Mo.1949).

Moreover, plaintiff did not except to the Examiner's finding that his certificate authorized only radial operations and not non-radial operations and did not allege such finding to be an error in its petition for reconsideration to the Commission. It appears, therefore, that plaintiff has abandoned its argument on this point, as well it should have since its position regarding its certificate is patently erroneous. See United States v. L. A. Tucker Truck Lines, 344 U.S. 33, 73 S. Ct. 67, 97 L.Ed. 54 (1952); United States v. Capital Transit Co., 338 U.S. 286, 70 S.Ct. 115, 94 L.Ed. 93 (1949); United States v. Great Northern Railway Co., 343 U.S. 562, 72 S.Ct. 985, 96 L.Ed. 1142

(1942); Gateway Transportation Co. v. United States 173 F.Supp. 822 (W.D. Wis., 1959); McGraw Electric Company v. United States, 120 F.Supp. 354 (E.D. Mo.1954).

■ Regarding the second matter, it is the exclusive function of the Interstate Commerce Commission to determine whether the public convenience and necessity requires the issuance of a certificate authorizing interstate motor carrier operations. United States v. Detroit & Cleveland Navigation Co., 326 U.S. 236, 65 S.Ct. 75, 90 L.Ed. 38 (1945).

■ The burden of establishing to the satisfaction of the Commission that the present or future public convenience and necessity require the plaintiff's requested grant of authority for non-radial operations, rests on the plaintiff as the applicant for such authority. See Quickie Transport Co. v. United States, 169 F. Supp. 826 (D.Minn., 1959); aff'd Mem. 361 U.S. 36, 80 S.Ct. 140, 4 L.Ed.2d 111 (1959); Patterson v. United States, 178 F.Supp. 771 (W.D.Ark.1959); and Sinett v. United States, 136 F.Supp. 37 (D.N. J.1955).

In meeting this burden, the plaintiff must not only show that the service is required in the convenience of the public, but that the service is a necessity. Within such element of necessity is included a showing that present facilities are inadequate. Hudson Transit Lines v. United States, 82 F.Supp. 153, 157 (S.D.N.Y. 1948); aff'd Mem. 338 U.S. 802, 70 S.Ct. 59, 94 L.Ed. 485 (1949).

■ The plaintiff's evidence came from household goods carriers with which it had in the past interlined in the unauthorized non-radial operations and agents which had in the past booked shipments to or from unauthorized points. These witnesses, of course, had an interest in the continuation of this unauthorized activity. No public witnesses or statistical and geographical evidence regarding territory and traffic was offered as is customarily the case. None of the testimony of plaintiff showed that the service of presently authorized household goods carriers were not adequate to meet the need of shippers to and from the points in the destination territory.

The opposing carriers offered convincing evidence which, in summary, showed that they had the equipment and agents to handle such needs and that generally they needed the business to keep equipment busy and prevent cost increases.

Upon the evidence of record the Commission was justified in finding that the services presently available are adequate. Since their inadequacy was an essential element of plaintiff's burden in seeking the non-radial certificate, its application was properly denied on grounds of insufficient evidence.

■ Regarding the third matter, it is probably unnecessary to treat with the same in view of the conclusion we have reached relative to the second matter. However, since we feel the Commission was justified under the circumstances of this case in disregarding plaintiff's past unauthorized operations in connection with plaintiff's application to validate such actions by granting certificated authority for non-radial operations, we will discuss the same.

In the first place, these illegal operations should not be allowed to form the basis of a decision which would validate them in the future except as a last and compelling resort. No such compelling reason exists here since present services appear adequate. Floyd & Beasley Transfer Co. v. United States, 185 F. Supp. 390 (N.D.Ala.1960).

■ Further, in order for such evidence of past illegal operations to be considered in determining whether there is a present or future need for a continuation of the same on a valid basis, it must be shown that such illegal operations were at least conducted under some color of right. McBride's Express, Inc. v. United States, 173 F.Supp. 539 (E.D. Ill.,1958). In affording no consideration to the past operations of the plaintiff which were beyond the scope of its operating authority in respect to a need for service, the Commission concluded, and

we think properly so, that the past illegal operations of plaintiff were conducted without color of right.

We have already pointed out that plaintiff's certificate of authority had a well-defined meaning before the Commission as a radial authority. Plaintiff's position that it sought the advice of an attorney who informed it that a non-radial operation was permissible under its certificate is not worthy of belief when it is considered that such attorney is now deceased, no written opinion or letter from such attorney is presented and there is no record of his having made an inquiry of the Interstate Commerce Commission regarding plaintiff's certificate. Furthermore, in 1957 Mr. Scherer of the Interstate Commerce Commission advised plaintiff that in his opinion plaintiff was operating in excess of the authority granted by his certificate and plaintiff did not alter its operation. Under these circumstances the Commission was fully justified in concluding that color of right was absent and thereupon refusing to afford consideration to the past operations of plaintiff beyond the scope of its operating authority.

 An order of the Interstate Commerce Commission carries with it a presumption of validity, and unless there is clear evidence to the contrary it must be presumed that the Commission has properly performed its official duties. Interstate Commerce Commission v. Jersey City, 322 U.S. 503, 64 S.Ct. 1129, 88 L. Ed. 1420 (1944); Federal Power Commission v. Hope Natural Gas Co., 320 U. S. 591, 64 S.Ct. 281, 88 L.Ed. 333 (1944); and United States v. Chemical Foundation, 272 U.S. 1, 47 S.Ct. 1, 71 L.Ed. 131 (1926).

We believe that plaintiff operated non-radially in excess of its radial authority beginning in 1952; that the evidence shows that present services of authorized carriers are adequate; that plaintiff has failed to meet its burden to establish a present or future public convenience or necessity in support of its application for non-radial authority; that plaintiff operated non-radially without color of right and under the circumstances of this case the Commission was fully justified in refusing to afford consideration to plaintiff's past illegal operations in connection with plaintiff's application for non-radial authority.

Such being the case, the Commission's order of January 11, 1961, will not be disturbed by this Court. Accordingly, the relief sought by plaintiff should be denied and plaintiff's action should be dismissed.